## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FLASHPOINT TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AT&T MOBILITY, LLC, D/B/A CINGULAR | ) | |
| WIRELESS, HTC AMERICA, INC., HTC CORP., | ) | |
| KYOCERA WIRELESS CORP., KYOCERA | ) | Civil Action No.: 08-140 GMS |
| CORP., LG ELECTRONICS USA, INC., LG | ) | |
| ELECTRONICS, INC., MOTOROLA, INC., | ) | **JURY TRIAL DEMANDED** |
| NOKIA, INC., NOKIA CORP., PALM, INC., | ) | |
| RESEARCH IN MOTION CORP., RESEARCH | ) | |
| IN MOTION LTD., SPRINT SPECTRUM L.P., | ) | |
| D/B/A SPRINT PCS, T-MOBILE USA, INC., and | ) | |
| CELLCO PARTNERSHIP, D/B/A VERIZON | ) | |
| WIRELESS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANT PALM, INC.'S ANSWER, DEFENSES, COUNTERCLAIMS, AND JURY DEMAND

Defendant Palm, Inc. ("Palm") answers the Complaint for Patent Infringement

("Complaint") of FlashPoint Technology, Inc. ("FlashPoint") as follows:

1.      Palm admits that this is a patent infringement action.  Palm admits that United

States Patent No. 6,118,480 ("the '480 patent") is entitled "Method and Apparatus for Integrating

a Digital Camera User Interface Across Multiple Operating Modes" and that what purports to be

a copy of it is attached to the Complaint as Exhibit 1.  Palm admits that United States Patent No.

6,177,956 ("the '956 patent") is entitled "System and Method for Correlating Processing Data

and Image Data within a Digital Camera" and that what purports to be a copy of it is attached to

the Complaint as Exhibit 2.  Palm admits that United States Patent No. 6,222,538 ("the '538

patent") is entitled "Directing Image Capture Sequences in a Digital Imaging Device Using

Scripts" and that what purports to be a copy of it is attached to the Complaint as Exhibit 3.  Palm admits that United States Patent No. 6,223,190 ("the '190 patent") is entitled "Method and System for Producing an Internet Page Description File on a Digital Imaging Device" and that what purports to be a copy of it is attached to the Complaint as Exhibit 4.  Palm admits that United States Patent No. 6,249,316 ("the '316 patent") is entitled "Method and System for Creating a Temporary Group of Images on a Digital Camera" and that what purports to be a copy of it is attached to the Complaint as Exhibit 5.  Palm admits that United States Patent No. 6,486,914 ("the '914 patent") is entitled "Method and System for Controlling User Interaction in a Digital Imaging Device Using Dynamic Overlay Bars" and that what purports to be a copy of it is attached to the Complaint as Exhibit 6.  Palm admits that United States Patent No. 6,504,575 ("the '575 patent") is entitled "Method and System for Displaying Overlay Bars in a Digital Imaging Device" and that what purports to be a copy of it is attached to the Complaint as Exhibit 7.  The '480, '956, '538, '190, '316, '914 and '575 patents may be collectively referred to herein as the "patents-in-suit."  Palm admits that FlashPoint alleges that it intends to seek injunctive and monetary relief but denies that such relief should be granted.  Palm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 of the Complaint and on that basis denies such allegations.

**THE PARTIES**

2.      Palm admits that the Delaware Division of Corporations lists FlashPoint as a corporation organized under the laws of the State of Delaware.  Palm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2 of the Complaint and on that basis denies such allegations.

3.      Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint and on that basis denies such allegations.

4.      Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint and on that basis denies such allegations.

5.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint and on that basis denies such allegations.

6.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint and on that basis denies such allegations.

7.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint and on that basis denies such allegations.

8.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint and on that basis denies such allegations.

9.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint and on that basis denies such allegations.

10.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint and on that basis denies such allegations.

11.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint and on that basis denies such allegations.

12.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint and on that basis denies such allegations.

13.    Palm admits the allegations of Paragraph 13 of the Complaint.

14.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint and on that basis denies such allegations.

15.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint and on that basis denies such allegations.

16.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint and on that basis denies such allegations.

17.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint and on that basis denies such allegations.

18.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint and on that basis denies such allegations.

## JURISDICTION AND VENUE

19.     Palm admits this action purports to arise under the Patent Laws of the United States.  Palm admits that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1131 and 1338(a).  To the extent not expressly admitted, Palm denies the remaining allegations in Paragraph 19 of the Complaint.

20.     Palm admits that it is subject to the personal jurisdiction of this Court.  To the extent not expressly admitted, Palm denies the remaining allegations in Paragraph 20 of the Complaint.

21.     FlashPoint has not identified the products that it may contend are made, used, sold, or offered for sale by Palm that are relevant to this lawsuit, and this paragraph makes allegations that are vague and ambiguous, including the allegation regarding "electronic products capable of being used . . . to capture, process and view digital images."  Palm therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint and on that basis denies such allegations.

22.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint and on that basis denies such allegations.

23.     Palm admits that it is subject to personal jurisdiction in this District and that it conducts business in this District, but otherwise denies the allegations of paragraph 23 as to Palm.  Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint relating to its co-defendants and on that basis denies such allegations.

## RESPONSE TO COUNT I – PATENT INFRINGEMENT

24.     Palm admits that the '480 patent on its face states that it was issued by the United States Patent and Trademark Office ("PTO") on September 12, 2000, that it was assigned to FlashPoint, and that it identifies Eric C. Anderson, Steve Saylor, and Amanda R. Mander as inventors.  Palm denies that the '480 patent is in full force and effect.  Palm lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24 of the Complaint and on that basis denies such allegations.

25.     Palm admits that the '956 patent on its face states that it was issued by the PTO on January 23, 2001, that it was assigned to FlashPoint, and that it identifies Eric C. Anderson and Mike M. Masukawa as inventors.  Palm denies that the '956 patent is in full force and effect. Palm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 of the Complaint and on that basis denies such allegations.

26.     Palm admits that the '538 patent on its face states that it was issued by the PTO on April 24, 2001, that it was assigned to FlashPoint, and that it identifies Eric C. Anderson as an inventor.  Palm denies that the '538 patent is in full force and effect.  Palm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 26 of the Complaint and on that basis denies such allegations.

27.     Palm admits that the '190 patent on its face states that it was issued by the PTO on April 24, 2001, that it was assigned to FlashPoint, and that it identifies Tim Takao Aihara and Rodney Somerstein as inventors.  Palm denies that the '190 patent is in full force and effect. Palm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27 of the Complaint and on that basis denies such allegations.

28.     Palm admits that the '316 patent on its face states that it was issued by the PTO on June 19, 2001, that it was assigned to FlashPoint, and that it identifies Eric C. Anderson as an inventor.  Palm denies that the '316 patent is in full force and effect.  Palm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28 of the Complaint and on that basis denies such allegations.

29.     Palm admits that the '914 patent on its face states that it was issued by the PTO on November 26, 2002, that it was assigned to FlashPoint, and that it identifies Eric C. Anderson as an inventor.  Palm denies that the '914 patent is in full force and effect.  Palm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29 of the Complaint and on that basis denies such allegations.

30.     Palm admits that the '575 patent on its face states that it was issued by the PTO on January 7, 2003, that it was assigned to FlashPoint, and that it identifies Michael A. Ramirez and Eric C. Anderson as inventors.  Palm denies that the '575 patent is in full force and effect. Palm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30 of the Complaint and on that basis denies such allegations.

31.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint and on that basis denies such allegations.

32.     Palm denies that the patents-in-suit "enable users to, among other things, capture, process and view digital images," or "protect technologies" that do so.  Palm otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the Complaint and on that basis denies such allegations.

33.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint and on that basis denies such allegations.

34.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint and on that basis denies such allegations.

35.     Palm denies that it practices inventions covered by one or more of the patents-in-suit.  Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint as they relate to Palm's co-defendants, and on that basis denies such allegations.

36.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint and on that basis denies such allegations.

37.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint and on that basis denies such allegations.

38.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint and on that basis denies such allegations.

39.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint and on that basis denies such allegations.

40.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Complaint and on that basis denies such allegations.

41.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint and on that basis denies such allegations.

42.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint and on that basis denies such allegations.

43.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint and on that basis denies such allegations.

44.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Complaint and on that basis denies such allegations.

45.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Complaint and on that basis denies such allegations.

46.     Palm denies the allegations of Paragraph 46 of the Complaint.

47.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the Complaint and on that basis denies such allegations.

48.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint and on that basis denies such allegations.

49.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 of the Complaint and on that basis denies such allegations.

50.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of the Complaint and on that basis denies such allegations.

51.     Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of the Complaint and on that basis denies such allegations.

52.     Palm denies that its activities require authority and/or license from FlashPoint. Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint as they relate to Palm's co-defendants, and on that basis denies such allegations.

53.    Palm denies the allegations of Paragraph 53 of the Complaint as to Palm.  Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 of the Complaint as to Palm's co-defendants, and on that basis denies such allegations.

54.    Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint and on that basis denies such allegations.

55.    Palm denies the allegations of Paragraph 55 of the Complaint as to Palm.  Palm lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of the Complaint as to Palm's co-defendants, and on that basis denies such allegations.

56.    Palm admits that FlashPoint demands a trial by jury on all issues in Paragraph 56 of the Complaint, but lacks knowledge or information sufficient to form a belief as to whether all issues necessarily require a trial by jury.  Palm demands a trial by jury on all issues so triable.

## DEFENSES

Without altering the burdens of proof, Palm asserts the following affirmative and other defenses against FlashPoint:

### FIRST DEFENSE
### (FAILURE TO STATE A CLAIM)

1.    FlashPoint fails to state a claim upon which relief can be granted and/or fails to plead the required allegations with sufficient particularity.

### SECOND DEFENSE
### (INVALIDITY)

2.    One or more claims of one or more of the patents-in-suit are invalid for failing to meet one or more of the requisite statutory and/or decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, sections 102, 103, 112, and 116.

8

**THIRD DEFENSE**
**(NON-INFRINGEMENT)**

3.      FlashPoint is not entitled to any relief against Palm because Palm does not infringe and has not infringed, directly or indirectly, any valid claim of the patents-in-suit.

**FOURTH DEFENSE**
**(PROSECUTION HISTORY ESTOPPEL)**

4.      Prosecution history estoppel bars FlashPoint from proving infringement of any valid claim of the patents-in-suit under the doctrine of equivalents.  FlashPoint is estopped from construing any valid claim of the patents-in-suit in such a way that may cover Palm's activities by reason of statements made to the PTO during the prosecution of the applications that issued as the patents-in-suit.

**FIFTH DEFENSE**
**(FAILURE TO MARK)**

5.      FlashPoint's right to seek damages and costs is limited pursuant to 35 U.S.C. § 287.  Palm is informed and believes, and thereupon alleges, that FlashPoint's licensees failed to mark allegedly patented articles with the patents-in-suit.

**SIXTH DEFENSE**
**(LIMITATIONS ON DAMAGES)**

6.      FlashPoint's right to seek damages and costs is limited pursuant to 35 U.S.C. § 286.

**SEVENTH DEFENSE**
**(EQUITABLE DEFENSES)**

7.      FlashPoint is barred by the doctrines of estoppel, laches, unclean hands, waiver and/or other applicable equitable doctrines.

**EIGHTH DEFENSE**
**(UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT)**

8.      Each of the patents-in-suit is unenforceable as the result of inequitable conduct before the United States Patent and Trademark Office.  During the prosecution of each of the patents-in-suit, the patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to the

United States patent laws and regulations, including 37 C.F.R. § 1.56.  Palm is informed and believes, and thereupon alleges, that the relevant patentees violated their duty of candor and good faith by failing to disclose prior art that they knew or should have known to be material to the patentability of one or more claims of each of the patents-in-suit, with the intent to deceive the PTO.  Palm sets out its allegations relating to this defense in its third counterclaim, seeking a declaratory judgment of unenforceability as to each of the patents-in-suit.  Palm incorporates those allegations in this defense by this reference.

## COUNTERCLAIMS

For its Counterclaims, Defendant and Counterclaimant Palm alleges against Plaintiff and Counterclaim Defendant FlashPoint as follows:

## PARTIES

1.      Palm is a corporation organized and existing under the laws of the State of Delaware and has its place of business at 950 West Maude Avenue, Sunnyvale, California.

2.      Based on the allegations of FlashPoint's Complaint, Palm is informed and believes, and thereupon alleges, that FlashPoint is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business at 20 Depot Street, Suite 2A, Peterborough, New Hampshire.

## JURISDICTION AND VENUE

3.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202 of non-infringement and invalidity of the patents-in-suit under the United States patent laws, 35 U.S.C. §§ 101 *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c).

## GENERAL ALLEGATIONS

5.      On March 7, 2008, Flashpoint filed suit against Palm, claiming infringement of the patents-in-suit.

6.    A justiciable controversy exists between Palm and Flashpoint concerning the non-infringement and invalidity of the patents-in-suit.

## FIRST COUNTERCLAIM
### (NON-INFRINGEMENT OF THE PATENTS-IN-SUIT)

7.    Palm refers to and incorporates by reference Paragraphs 1-6 of its Counterclaims as though fully set forth herein.

8.    Palm has not and is not now infringing, directly or indirectly, the claims of the patents-in-suit asserted by Flashpoint against Palm.

9.    Palm is entitled to a declaratory judgment that Palm does not infringe the asserted claims of the patents-in-suit.

## SECOND COUNTERCLAIM
### (INVALIDITY OF THE PATENTS-IN-SUIT)

10.    Palm refers to and incorporates by reference Paragraphs 1-6 of its Counterclaims as though fully set forth herein.

11.    One or more claims of the patents-in-suit are invalid for failing to meet one or more of the requisite statutory and/or decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, sections 102, 103, 112, and 116.

12.    Palm is entitled to a declaratory judgment that one or more of the claims of the patents-in-suit are invalid.

## THIRD COUNTERCLAIM
### (UNENFORCEABILITY OF THE PATENTS-IN-SUIT
### DUE TO INEQUITABLE CONDUCT)

13.    Palm refers to and incorporates by reference Paragraphs 1-6 of its Counterclaims as though fully set forth herein.

14.    Palm is entitled to a declaratory judgment that one or more of the claims of the patents-in-suit are unenforceable due to inequitable conduct, as specifically alleged below.

**A.    UNENFORCEABILITY OF THE '956 PATENT**

9.      On October 23, 1996, the named inventors of the '956 patent and their agents associated with the prosecution of the applications that resulted in the '956 patent—i.e., Eric C. Anderson, Mike M. Masukawa, and their patent attorney, Stephen G. Sullivan, among others— (collectively "the '956 patentees") filed United States Patent Application Serial No. 08/735,705 with the PTO, prosecuted that initial application thereafter, and/or prosecuted a continued patent application with the same application number, until it was issued by the PTO as the '956 patent on January 23, 2001 (hereinafter, "the '956 patent's prosecution").

10.     During the '956 patent's prosecution, each of the '956 patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to the United States patent laws and regulations, including 37 C.F.R. § 1.56.

11.     Pursuant to 37 C.F.R. §§ 1.56, 1.97, and 1.98, the '956 patentees were required to file at least one Information Disclosure Statement ("IDS") to the PTO during the '956 patent's prosecution, setting forth all patents, publications, applications, or other information known to be material to patentability for consideration by the PTO.

12.     As further described in paragraphs 13-25 below, the '956 patentees withheld prior art from the PTO that they knew or should have known existed and was material to the patentability of the '956 patent during the '956 patent's prosecution.

**The Wakui Patent**

13.     United States Patent No. 5,742,339 ("the Wakui patent"), which resulted from an initial patent application filed on December 22, 1995 and which was issued on April 21, 1998, was material to the patentability of the '956 patent.  There is a substantial likelihood that a reasonable examiner would have considered the Wakui patent important in deciding whether to allow the issuance of the '956 patent, and it was not cumulative of other references provided by the '956 patentees to the PTO during the '956 patent's prosecution.

14.     Specifically, the Wakui patent discloses "an electronic still video camera [i.e., a digital camera] having a built-in memory for storing a plurality of frames of image data, and a

removable memory for storing a plurality of frames of image data. At least one of the plurality of frames of image data stored in the built-in memory is selected.  The selected plurality of frees [sic: frames] of image data stored in the built-in memory are then transferred to the removable memory.  . . .  Optionally, the electronic still video camera has a monitor for displaying the plurality of index images.  This facilitates the selection of the frames of image data that are to be transferred from the built-in memory to the removable memory.  Further optionally, the electronic still video camera generates an index number corresponding to each of the index images, and superimposes the index numbers on each of the corresponding index images.  This further facilitates the selection of the images that are to be transferred from the built-in memory to the removable memory."

15.     The Wakui patent is material to (without limitation) at least claims 1, 7, and 13 of the '956 patent, each of which require a digital imaging system to capture image and processing data (e.g., a unique image name, such as a unique number) and processing both data for a first image while receiving image and processing data for a second image.

16.     Palm is informed and believes, and thereupon alleges, that the Wakui patent was known to Mr. Anderson and/or Mr. Sullivan during the '956 patent's prosecution.  Specifically, the Wakui patent was cited to these '956 patentees by another patent examiner of the PTO on or around September 12, 2000, in the course of prosecution of the '316 patent (also asserted against Defendants in this action) as United States Application Serial No. 08/702,286.

17.     Palm is informed and believes, and thereupon alleges, that one or more of the '956 patentees knew of the materiality of the Wakui patent to the patentability of the '956 patent during the '956 patent's prosecution.  Specifically, Mr. Anderson submitted a declaration and Mr. Sullivan submitted a response to the PTO on or around February 2, 2001 that addressed the Wakui patent with respect to the '316 patent's prosecution.  However, the '956 patentees failed to disclose the Wakui patent to the examiner of the '956 patent.

18.     Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld with an intent to mislead the PTO.

**The Matsumoto Patent**

19.     United States Patent No. 5,796,428 ("the Matsumoto patent"), which resulted from a patent application filed on October 17, 1994 and which was issued on August 18, 1998, was material to the patentability of the '956 patent.  There is a substantial likelihood that a reasonable examiner would have considered the Matsumoto patent important in deciding whether to allow the issuance of the '956 patent, and it is not cumulative of other references provided by the '956 patentees to the PTO during the '956 patent's prosecution.

20.     Specifically, the Matsumoto patent discloses that "in accordance with the fifth, six and seventh embodiments of the present invention . . . an image pickup [] of the image capturing unit [of a digital camera] captures a picture image from outside the image capturing unit and converts it into electronic image data.  The image data is sent to a buffer [] and stored therein. The buffer [] can store therein a plurality of sheets of picture images.  . . .  More in detail, the picture data has attribute data and image data[].  The image data [] contains reference data corresponding to a compression of the reference image (4001 or 4101).  Meanwhile, contained in the attribute data are differential data -1 (4202), +1 (4203), -2 (4204) and +2 (4205) which correspond respectively to compressions of the differences between the images -1 (4003 or 4102), +1 (4004 or 4103), -2 (4002 or 4104), +2 (4005 or 4105) and the reference image (4001 or 4101) and which are arranged in this order."

21.     The Matsumoto patent is material (without limitation) to at least claims 1, 7, and 13 of the '956 patent, each of which require a digital imaging system to capture image and processing data (e.g., a unique image name, such as a unique number) and process data for a first image while receiving image and processing data for a second image.

22.     Palm is informed and believes, and thereupon alleges, that the Matsumoto patent was known to Mr. Anderson and/or Mr. Sullivan during the '956 patent's prosecution. Specifically, (1) the Matsumoto patent was cited to these '956 patentees by another patent examiner of the PTO on or around April 16, 1999, during the prosecution of the '316 patent (also asserted against Defendants) as United States Application Serial No. 08/702,286, and (2) it was

cited to these '956 patentees by the '316 patent's examiner yet again on or around March 1, 1999, during the prosecution of the '480 patent (also asserted against Defendant) as United States Application Serial No. 08/851,667.

23.    Palm is informed and believes, and thereupon alleges, that the materiality of the Matsumoto patent to the patentability of the '956 patent was known by one or more of the '956 patentees during the '956 patent's prosecution. Specifically, Mr. Sullivan submitted a response to the PTO on or around August 19, 1999 that addressed the Matsumoto patent with respect to the '480 patent's prosecution. However, the '956 patentees failed to disclose the Matsumoto patent to the examiner of the '956 patent.

24.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that the failure to disclose this reference was made with an intent to mislead the PTO.

25.    Given the conduct of the '956 patentees during the prosecution of that patent, as described above, the '956 patentees engaged in inequitable conduct during the '956 patent's prosecution by their knowing failure to disclose material prior art to the PTO, including the Wakui and Matsumoto patents. The '956 patent is unenforceable against Palm because of said inequitable conduct.

**B.    UNENFORCEABILITY OF THE '480 PATENT**

26.    On May 6, 1997, the named inventors of the '480 patent and their agents associated with the prosecution of the applications that resulted in the '480 patent—i.e., Eric C. Anderson, Steve Saylor, Amanda R. Mander and their patent attorney, Stephen G. Sullivan, among others—(collectively "the '480 patentees") filed United States Patent Application Serial No. 08/851,667 with the PTO, prosecuted that initial application thereafter, and/or prosecuted a continued patent application with the same application number until it was issued by the PTO as the '480 patent on September 12, 2000 (hereinafter, "the '480 patent's prosecution").

27.    During the prosecution of the '480 patent, each of the '480 patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that

individual that is material to patentability, pursuant to the United States patent laws and regulations, including 37 C.F.R. § 1.56.

28.     Pursuant to 37 C.F.R. §§ 1.56, 1.97, and 1.98, the '480 patentees were required to file at least one IDS to the PTO during the '480 patent's prosecution, setting forth all patents, publications, applications, or other information known to be material to patentability for consideration by the PTO.

29.     As further described in paragraphs 30-36 below the '480 patentees withheld prior art from the PTO that they knew or should have known existed and was material to the patentability of the '480 patent during the '480 patent's prosecution.

**The Itoh Patent**

30.     United States Patent No. 5,966,122 ("the Itoh patent"), which resulted from a provisional patent application filed on August 9, 1996 and which was issued on October 12, 1999, is material to the patentability of the '480 patent because there is a substantial likelihood that a reasonable examiner would have considered the Itoh patent important in deciding whether to allow the issuance of the '480 patent, and it is not cumulative of other references provided by the '480 patentees to the PTO during the '480 patent's prosecution.

31.     Specifically, the Itoh patent discloses a video camera with a touch-screen display of images stored, and the ability to select from various additional relevant information corresponding to the selected or active item(s).

32.     The Itoh patent is material (without limitation) to at least claims 1, 12, 22 and 29 of the '480 patent, each of which require a display, or interaction / scrolling means which, when utilized, display additional relevant information corresponding to the active item.

33.     Palm is informed and believes, and thereupon alleges, that the Itoh patent was known to Mr. Anderson and/or Mr. Sullivan during the '480 patent's prosecution.  Specifically, the Itoh patent was cited to these '480 patentees by another patent examiner of the PTO on or around February 2, 2000, during prosecution of the '316 patent (also asserted against Defendants) as United States Application Serial No. 08/702,286.

34.     Palm is informed and believes, and thereupon alleges, that the materiality of the Itoh patent to the patentability of the '480 patent was known by one or more of the '480 patentees during the '480 patent's prosecution.  Specifically, Mr. Anderson submitted a declaration and Mr. Sullivan submitted a response to the PTO on or around March 16, 2000 that addressed the Itoh patent with respect to the '316 patent's prosecution.  However, the '480 patentees failed to disclose the Itoh patent to the examiner of the '480 patent.

35.     Based on the foregoing, Palm is informed and believes, and thereupon alleges, that the failure to disclose this reference was the result of an intent to mislead the PTO.

36.     Given the conduct of the '480 patentees with respect to the prosecution of that patent, as described above, the '480 patentees engaged in inequitable conduct during the '480 patent's prosecution by failing to disclose to the PTO material prior art, including the Itoh patent. Consequently, the '480 patent is unenforceable against Palm because of the '480 patentees' inequitable conduct.

## C.    UNENFORCEABILITY OF THE '914 PATENT

37.     On February 27, 1998, the named inventor of the '914 patent and his agents associated with the prosecution of the applications that resulted in the '914 patent—i.e., Eric C. Anderson and his patent attorney, Stephen G. Sullivan, among others—(collectively "the '914 patentees") filed United States Patent Application Serial No. 09/032,172 with the PTO, prosecuted that initial application thereafter, and/or prosecuted a continued patent application with the same application number until it was issued by the PTO as the '914 patent on November 26, 2002 (hereinafter, "the '914 patent's prosecution").

38.     During the '914 patent's prosecution, each of the '914 patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to the United States patent laws and regulations, including 37 C.F.R. § 1.56.

39.     Pursuant to 37 C.F.R. §§ 1.56, 1.97, and 1.98, the '914 patentees were required to file at least one IDS to the PTO during the '914 patent's prosecution, setting forth all patents,

17

publications, applications, or other information known to be material to patentability for consideration by the PTO.

40.     As further described in paragraphs 41-67 below, the '914 patentees withheld prior art from the PTO that they knew existed and that was material to the patentability of the '914 patent during the '914 patent's prosecution.

**The Hirasawa Patent**

41.     United States Patent No. 5,488,414 ("the Hirasawa patent"), which resulted from an initial patent application filed on March 2, 1992 and which was issued on January 30, 1996, is material to the patentability of the '914 patent because there is a substantial likelihood that a reasonable examiner would have considered the Hirasawa patent important in deciding whether to allow the issuance of the '914 patent, and it is not cumulative of other references provided by the '914 patentees to the PTO during the '914 patent's prosecution.

42.     Specifically, the Hirasawa patent discloses a video camera with various modes of operation, along with a display screen with output of the particular modes of operation and a contact detector—i.e., a function key—to switch on and off the various modes of operation being displayed.  The Hirasawa patent is material (without limitation) to at least claims 1 and 6 of the '914 patent, each of which require displaying mode-specific information on a screen with a corresponding function or soft key, and dynamically changing the mode-specific information on the display during the operation of the digital camera.

43.     Palm is informed and believes, and thereupon alleges, that the Hirasawa patent was known to Mr. Anderson and/or Mr. Sullivan during the '914 patent's prosecution. Specifically, the Hirasawa patent was cited to these '914 patentees by another patent examiner of the PTO on or around March 3, 2001 as part of a Notice of Allowability during the prosecution of the '316 patent (also asserted against Defendants) as United States Application Serial No. 08/702,286.

44.     Palm is informed and believes, and thereupon alleges, that the materiality of the Hirasawa patent to the patentability of the '914 patent was known by one or more of the '914

patentees during the '914 patent's prosecution. Specifically, the Hirasawa patent was cited as part of the Notice of Allowability of the '316 patent sent to Mr. Sullivan. Further, the subject matter of the '316 patent also pertained to digital cameras and to performing operations using keys based on information on a display on the camera. However, the '914 patentees failed to disclose the Hirasawa patent to the examiner of the '914 patent.

45.     Based on the foregoing, Palm is informed and believes, and thereupon alleges, that the failure to disclose this reference was the result of an intent to mislead the PTO.

46.     Given the conduct of the '914 patentees with respect to the prosecution of that patent, as described above, the '914 patentees engaged in inequitable conduct during the '914 patent's prosecution by failing to disclose to the PTO material prior art, including the Hirasawa patent. Consequently, the '914 patent is unenforceable against Palm because of the '914 patentees' inequitable conduct.

**The Parulski '406 Patent**

47.     United States Patent No. 5,828,406 ("the Parulski '406 patent"), which resulted from a patent application filed on December 30, 1994 and which was issued on October 27, 1998, is material to the patentability of the '914 patent because there is a substantial likelihood that a reasonable examiner would have considered the Parulski '406 patent important in deciding whether to allow the issuance of the '914 patent, and it is not cumulative of other references provided by the '914 patentees to the PTO during the '914 patent's prosecution.

48.     Specifically, the Parulski '406 patent discloses an electronic camera that operates in different modes with "an LCD display screen [that] leaves a status area [] available for other purposes, specifically to show text indicating the function of a set of reconfigurable control buttons [] in the control section" of the camera, and further with function keys corresponding to functions set forth in the text of the status areas of the display that act as an information bar.

49.     The Parulski '406 patent is material (without limitation) to at least claims 1 and 6 of the '914 patent, each of which require a display of an information bar on a screen with a

corresponding function keys that can be dynamically changed during the operation of the digital camera in different modes.

50.    The Parulski '406 patent was known by Mr. Anderson and/or Mr. Sullivan during the '914 patent's prosecution, because the Parulski '406 patent was submitted on an IDS by Mr. Sullivan to another patent examiner of the PTO on or around May 11, 1999, as part of the prosecution of the '316 patent (also asserted against Defendants) as United States Application Serial No. 08/702,286.

51.    Palm is informed and believes, and thereupon alleges, that the materiality of the Parulski '406 patent to the patentability of the '914 patent was known by one or more of the '914 patentees during the '914 patent's prosecution.  Specifically, the subject matter of the '316 patent also pertained to digital cameras and to performing operations using keys based on information on a display of the camera.  However, the '914 patentees failed to disclose the Parulski '406 patent to the examiner of the '914 patent.

52.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that the failure to disclose this reference was the result of an intent to mislead the PTO.

53.    Given the conduct of the '914 patentees with respect to the prosecution of that patent, as described above, the '914 patentees engaged in inequitable conduct during the '914 patent's prosecution by failing to disclose to the PTO material prior art, including the Parulski patent.  Consequently, the '914 patent is unenforceable against Palm because of the '914 patentees' inequitable conduct.

**The Fellegara Patent**

54.    United States Patent No. 5,845,166 ("the Fellegara patent"), which resulted from a patent application filed on February 20, 1997 and which was issued on December 1, 1998, is material to the patentability of the '914 patent because there is a substantial likelihood that a reasonable examiner would have considered the Fellegara patent important in deciding whether to allow the issuance of the '914 patent, and it is not cumulative of other references provided by the '914 patentees to the PTO during the '914 patent's prosecution.

55.    Specifically, the Fellegara patent discloses an electronic camera that operates in different modes and that "a more advanced graphical user interface [on the main screen display unit] can be incorporated to permit the operator to select various camera functions. For example, . . . camera function icons are displayed in an icon group [] on the main screen display unit [] to edit information related to the images (including conventional APS data), obtain help information, enter user defined data into the camera or perform other functions. An image display area [] is used to display the digital image being reviewed or edited the display area [] to indicate the respective position of the displayed digital image in its associated memory. A function name display area [] displays the camera function currently selected. A function data entry area [] displays data associated with the selected camera function. If desired, the icon group [] can be generated as transparent icons that can be laid over the displayed digital image, so that the size of the image display area [] can be expanded and the camera operator can see the displayed digital image through the displayed icons." The Fellegara patent further discloses navigation buttons to permit operations of the various functioned disclosed on the main screen display unit.

56.    The Fellegara patent is material (without limitation) to at least claims 1 and 6 of the '914 patent, each of which require a display of an information bar laid over an image on a screen, with a corresponding function keys that can be dynamically changed during the operation of the digital camera in different modes.

57.    Palm is informed and believes, and thereupon alleges, that the Fellegara patent was known to Mr. Anderson and/or Mr. Sullivan during the '914 patent's prosecution. Specifically, the Fellegara patent was cited to these '914 patentees by another patent examiner of the PTO on or around October 27, 1999, during the prosecution of the '480 patent (also asserted against Defendants) as United States Application Serial No. 08/851,667.

58.    Palm is informed and believes, and thereupon alleges, that the materiality of the Fellegara patent to the patentability of the '914 patent was known by one or more of the '914 patentees during the '914 patent's prosecution. Specifically, Mr. Sullivan submitted a response

to the PTO on or around January 14, 2000 that addressed the Fellegara patent with respect to the '480 patent's prosecution. However, the '914 patentees failed to disclose the Fellegara patent to the examiner of the '914 patent.

59. Based on the foregoing, Palm is informed and believes, and thereupon alleges, that the failure to disclose this reference was the result of an intent to mislead the PTO.

60. Given the conduct of the '914 patentees with respect to the prosecution of that patent, as described above, the '914 patentees engaged in inequitable conduct during the '914 patent's prosecution by failing to disclose to the PTO material prior art, including the Fellegara patent. Consequently, the '914 patent is unenforceable against Palm because of the '914 patentees' inequitable conduct.

**The Mcintyre Patent**

61. United States Patent No. 5,940,121 ("the Mcintyre patent"), which resulted from an application filed on February 20, 1997 and which was issued on August 17, 1999, is material to the patentability of the '914 patent because there is a substantial likelihood that a reasonable examiner would have considered the Mcintyre patent important in deciding whether to allow the issuance of the '914 patent, and it is not cumulative of other references provided by the '914 patentees to the PTO during the '914 patent's prosecution.

62. Specifically, the Mcintyre patent discloses an electronic camera that operates in different modes with "a series of control switches [] provided on the rear side [] of the camera body [] preferably adjacent the flat imaging and textual displays [] for controlling each of the display and input functions of the camera []. . . . The user . . . reviews the displayed image [] and selectively determines . . . the specific features and format of the selected images . . . . This is accomplished by responding to a series of text prompts through feedback supplied through the text display[]. Confirmation of a selection is done by depression of a selection control button [], while respective increment and decrement buttons [] are used to scroll through a scripted menu of choices . . . which is visible in the text . . . . [A] single composite display [] may be alternately utilized in lieu of the pair of dual imaging and textual displays []."

63.    The Mcintyre patent is material (without limitation) to at least claims 1 and 6 of the '914 patent, each of which require a display of an information bar on a screen, with a corresponding function keys that can be dynamically changed during the operation of the digital camera in different modes.

64.    Palm is informed and believes, and thereupon alleges, that the Mcintyre patent was known to Mr. Anderson and/or Mr. Sullivan during the '914 patent's prosecution. Specifically, the Mcintyre patent was cited to these '914 patentees by another patent examiner of the PTO on or around October 27, 1999 during the prosecution of the '480 patent (also asserted against Defendants) as United States Application Serial No. 08/851,667.

65.    Palm is informed and believes, and thereupon alleges, that the materiality of the Mcintyre patent to the patentability of the '914 patent was known by one or more of the '914 patentees during the '914 patent's prosecution. Specifically, Mr. Sullivan submitted a response to the PTO on or around January 14, 2000 that addressed the Mcintyre patent with respect to the '480 patent's prosecution. However, the '914 patentees failed to disclose the Mcintyre patent to the examiner of the '914 patent.

66.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that the failure to disclose this reference was the result of an intent to mislead the PTO.

67.    Given the conduct of the '914 patentees with respect to the prosecution of that patent, as described above, the '914 patentees engaged in inequitable conduct during the '914 patent's prosecution by failing to disclose to the PTO material prior art, including the Mcintyre patent. Consequently, the '914 patent is unenforceable against Palm because of the '914 patentees' inequitable conduct.

**D.    UNENFORCEABILITY OF THE '575 PATENT**

68.    On February 27, 1998, the named inventors of the '575 patent and their agents associated with the prosecution of the applications that resulted in the '575 patent—i.e., Eric C. Anderson, Michael A. Ramirez, and their patent attorney, Stephen G. Sullivan, among others— (collectively "the '575 patentees") filed United States Patent Application Serial No. 09/032,177

23

with the PTO, and prosecuted that application until it was issued by the PTO as the '575 patent on January 7, 2003 (hereinafter, "the '575 patent's prosecution").

69. During the '575 patent's prosecution, each of the '575 patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to the United States patent laws and regulations, including 37 C.F.R. § 1.56.

70. Pursuant to 37 C.F.R. §§ 1.56, 1.97, and 1.98, the '575 patentees were required to file at least one IDS to the PTO during the '575 patent's prosecution, setting forth all patents, publications, applications, or other information known to be material to patentability for consideration by the PTO.

71. As further described in paragraphs 72-85 below, the '575 patentees withheld prior art from the PTO that they knew existed and that was material to the patentability of the '575 patent during the '575 patent's prosecution.

### The Anderson '106 Patent

72. United States Patent No. 5,496,106 ("the Anderson '106 patent"), which resulted from a patent application filed on December 13, 1994 and which issued on March 5, 1996, is material to the patentability of the '575 patent because there is a substantial likelihood that a reasonable examiner would have considered the Anderson '106 patent important in deciding whether to allow the issuance of the '575 patent, and it is not cumulative of other references provided by the '575 patentees to the PTO during the '575 patent's prosecution.

73. Specifically, the Anderson '106 patent discloses "method for adjusting the display [for a digital camera] to provide a[n] . . . overlay" whereby the overlay effect is achieved by modifying the luminance signal generated from the digital image to be displayed.

74. The Anderson '106 patent is material (without limitation) to at least claim 1 of the '575 patent, which requires a display of an overlay bar on a display screen of a digital camera by modifying the luminance value associated with the part of the image affected by the bar.

24

75.    The Anderson '106 patent was known to Mr. Anderson and possibly other '575 patentees before and during the '575 patent's prosecution, because Mr. Anderson is the named inventor of the Anderson '106 patent.

76.    Palm is informed and believes, and thereupon alleges, that the materiality of the Anderson '106 patent to the patentability of the '575 patent was known by one or more of the '575 patentees during the '575 patent's prosecution.  Specifically, applications for both the '575 and Anderson '106 patents were submitted by the same inventor, and both applications relate to using overlays for display screens on digital cameras to assist the viewing and further processing of the image by the camera user.  However, the '575 patentees failed to disclose the Anderson '106 patent to the examiner of the '575 patent.

77.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that the failure to disclose this reference was the result of an intent to mislead the PTO.

78.    Given the conduct of the '575 patentees with respect to the prosecution of that patent, as described above, the '575 patentees engaged in inequitable conduct during the '575 patent's prosecution by failing to disclose to the PTO material prior art, including the Anderson '106 patent.  Consequently, the '575 patent is unenforceable against Palm because of the '575 patentees' inequitable conduct.

**The Fellegara Patent**

79.    United States Patent No. 5,845,166 ("the Fellegara patent"), which resulted from a United States patent application filed on February 20, 1997 and which was issued on December 1, 1998, is material to the patentability of the '575 patent because there is a substantial likelihood that a reasonable examiner would have considered the Fellegara patent important in deciding whether to allow the issuance of the '575 patent, and it is not cumulative of other references provided by the '575 patentees to the PTO during the '575 patent's prosecution.

80.    Specifically, the Fellegara patent discloses an electronic camera with and that "a more advanced graphical user interface [on the main screen display unit that] can be incorporated to permit the operator to select various camera functions.  For example, . . . camera function

icons are displayed in an icon group [] on the main screen display unit [] to edit information related to the images (including conventional APS data), obtain help information, enter user defined data into the camera or perform other functions. An image display area [] is used to display the digital image being reviewed or edited the display area [] to indicate the respective position of the displayed digital image in its associated memory. A function name display area [] displays the camera function currently selected.  A function data entry area [] displays data associated with the selected camera function.  If desired, the icon group [] can be generated as transparent icons that can be laid over the displayed digital image, so that the size of the image display area [] can be expanded and the camera operator can see the displayed digital image through the displayed icons."

81.    The Fellegara patent is material (without limitation) to at least claim 1 of the '575, which requires a display of an information bar laid over an image on a screen.  Thus, the Fellegara patent discloses  steps for displaying information laid over an image that is simultaneously displayed, which are part of the claimed invention of the '575 patent.

82.    Palm is informed and believes, and thereupon alleges, that the Fellegara patent was known to Mr. Anderson and/or Mr. Sullivan during the '575 patent's prosecution. Specifically, the Fellegara patent was cited to these '575 patentees by another patent examiner of the PTO on or around October 27, 1999 during the prosecution of the '480 patent (also asserted against Defendants) as United States Application Serial No. 08/851,667.

83.    Palm is informed and believes, and thereupon alleges, that the materiality of the Fellegara patent to the patentability of the '575 patent was known by one or more of the '575 patentees during the '575 patent's prosecution.  Specifically, Mr. Sullivan submitted a response to the PTO on or around January 14, 2000 that addressed the Fellegara patent with respect to the '480 patent's prosecution.  However, the '575 patentees failed to disclose the Fellegara patent to the Examiner of the '575 patent.

84.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that the failure to disclose this reference was the result of an intent to mislead the PTO.

85.     Given the conduct of the '575 patentees with respect to the prosecution of that patent, as described above, the '575 patentees engaged in inequitable conduct during the '575 patent's prosecution by failing to disclose to the PTO material prior art, including the Fellegara and Anderson '106 patents.  Consequently, the '575 patent is unenforceable against Palm because of the '575 patentees' inequitable conduct.

D.     UNENFORCEABILITY OF THE '538 PATENT

86.     On February 27, 1998, the named inventor of the '538 patent and his agents associated with the prosecution of the applications that resulted in the '538 patent—i.e., Eric C. Anderson and his patent attorney, Stephen G. Sullivan, among others—(collectively "the '538 patentees") filed United States Patent Application Serial No. 09/032,659 with the PTO, and prosecuted that application until it was issued by the PTO as the '538 patent on April 24, 2001 (hereinafter, "the '538 patent's prosecution").

87.     During the '538 patent's prosecution, each of the '538 patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to the United States patent laws and regulations, including 37 C.F.R. § 1.56.

88.     Pursuant to 37 C.F.R. §§ 1.56, 1.97, and 1.98, the '538 patentees were required to file at least one IDS to the PTO during the '538 patent's prosecution, setting forth all patents, publications, applications, or other information known to be material to patentability for consideration by the PTO.

89.     As further described in paragraphs 90-96 below, the '538 patentees withheld prior art from the PTO that they knew existed and that was material to the patentability of the '538 patent during the '538 patent's prosecution.

**The Parulski '678 Patent**

90.     United States Patent No. 5,633,678 ("the Parulski '678 patent"), which resulted from a patent application filed on December 20, 1995 and which issued on March 27, 1997, is material to the patentability of the '538 patent because there is a substantial likelihood that a

reasonable examiner would have considered the Parulski '678 patent important in deciding whether to allow the issuance of the '538 patent, and it is not cumulative of other references provided by the '538 patentees to the PTO during the '538 patent's prosecution.

91.     Specifically, the Parulski '678 patent discloses that "a user inputs category information, such as category names, and related text or graphics images, from the host computer []. The user then downloads the category information to the [digital] camera []. This may be done through a tethered connection to the camera, or by writing appropriate files into the memory card []. The user turns on the camera [], and selects an appropriate category []. At this stage, the user can also decide to activate the overlay capability for date, time, text, and graphics images. The picture is taken [], and the category information is optionally overlaid into the image []. The digital image data is then stored in the memory card [] together with category information, either separately or as overlaid into the image data []. . . . [T]he categories (tags) are given names, optional text strings, and graphics. The category information also includes overlay control information indicating whether or not the text string, date, and time should be overlaid into the image."

92.     The Parulski '678 patent is material (without limitation) to at least claims 1, 7, and 11 of the '538 patent, which require a sequence or script, such as one externally loaded onto the camera, and the user following interactive instructions or scripts to perform camera operations.

93.     Palm is informed and believes, and thereupon alleges, that the Parulski '678 patent was known to Mr. Anderson and/or Mr. Sullivan during the '538 patent's prosecution. Specifically: (1) the Parulski '678 patent was cited to these '538 patentees by another patent examiner of the PTO on or around March 9, 1998 during the prosecution of the '956 patent (also asserted against Defendants) as United States Application Serial No. 08/735,705, and (2) the Parulski '678 patent was cited to these '538 patentees yet again by yet another, second examiner on or around June 4, 1998 during the prosecution of the '316 patent (also asserted against Defendants) as United States Application Serial No. 08/702,286, and (3) the Parulski '678 patent

was cited to Mr. Sullivan yet a third time by yet another, third examiner on or around December 16, 1999 during the prosecution of the '190 patent (also asserted against Defendants) as United States Application Serial No. 09/059,611.

94.     Palm is informed and believes, and thereupon alleges, that the materiality of the Parulski '678 patent to the patentability of the '538 patent was known by one or more of the '538 patentees during the '538 patent's prosecution.  Specifically: (1) Mr. Sullivan submitted a response to the PTO on or around October 19, 1998 that addressed the Parulski '678 patent with respect to the '316 patent's prosecution, and (2) Mr. Sullivan submitted a response to the PTO on or around March 15, 2000 that addressed the Parulski '678 patent with respect to the '190 patent's prosecution.  However, the '538 patentees failed to disclose the Parulski '678 patent to the examiner of the '538 patent.

95.     Based on the foregoing, Palm is informed and believes, and thereupon alleges, that the failure to disclose this reference was the result of an intent to mislead the PTO.

96.     Given the conduct of the '538 patentees with respect to the prosecution of that patent, as described above, the '538 patentees engaged in inequitable conduct during the '538 patent's prosecution by failing to disclose to the PTO material prior art, including the Parulski '678 patent.  Consequently, the '538 patent is unenforceable against Palm because of the '538 patentees' inequitable conduct.

## E.     UNENFORCEABILITY OF THE '190 PATENT

97.     On April 13, 1998, the named inventors of the '190 patent and their agents associated with the prosecution of the applications that resulted in the '190 patent—i.e., Tim Takao Aihara, Rodney Somerstein and their patent attorney, Stephen G. Sullivan, among others—(collectively "the '190 patentees") filed United States Patent Application Serial No. 09/059,611 with the PTO, and prosecuted that application until it was issued by the PTO as the '190 patent on April 24, 2001 (hereinafter, "the '190 patent's prosecution").

98.     During the '190 patent's prosecution, each of the '190 patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to the United States patent laws and regulations, including 37 C.F.R. § 1.56.

99.     Pursuant to 37 C.F.R. §§ 1.56, 1.97, and 1.98, the '538 patentees were required to file at least one IDS to the PTO during the '190 patent's prosecution, setting forth all patents, publications, applications, or other information known to be material to patentability for consideration by the PTO.

100.     As further described in paragraphs 101-107 below, the '190 patentees withheld prior art from the PTO that they knew existed and that was material to the patentability of the '190 patent during the '190 patent's prosecution.

**The Sarbadhikari Patent**

101.     United States Patent No. 5,477,264 ("the Sarbadhikari patent"), which resulted from a patent application filed on March 29, 1994 and which issued on December 19, 1995, is material to the patentability of the '190 patent because there is a substantial likelihood that a reasonable examiner would have considered the Sarbadhikari patent important in deciding whether to allow the issuance of the '190 patent, and it is not cumulative of other references provided by the '190 patentees to the PTO during the '190 patent's prosecution.

102.     Specifically, the Sarbadhikari patent discloses that "enhanced algorithm files might be tailored in a specific manner for memory cards sold for particular applications.  In electronic still imaging systems [i.e., digital cameras], the resolution and/or photographic speed of the camera may be altered by, e.g., subsampling and/or electrical gain adjustments.  A type of non-image data file providing such adjustments would be included in image data storage devices which are designed for specific capture applications.  . . . When the camera is ready to capture images, the processor [] within the camera checks if there are software enhancements in the enhancement file [] in the card [].  If such files are present, the processor [] downloads the processing algorithm(s) in the enhancement file [] contained in the removable memory card [].

. . . In addition to storing complete software algorithms, the software enhancement located in the enhancement file [] on the card [] can be codes which are used to allow access to certain features of the software already located in the camera (or computer), or to select among specific options for the software located in the camera (or computer). . . . 'Pre-exposed' image data files can also be resident in the enhancement file [] in the removable image data storage device. These files would include image templates or overlays for combination with user-captured images . . . . These files would likely be computer generated surrounds having the purpose of enhancing the images captured by the user for particular situations. The manner in which these files are combined with user captured images can be automatic or with user intervention through the user input section []. . . . The camera may prompt the user to frame the image appropriately with cues in the electronic viewfinder . . . . An outline of the template might appear in the viewfinder [] to assist with framing. The camera should be capable of understanding where the 'pre-exposed' overlay will appear in the final combined image in order to assist the user with framing. A file conveying this information may accompany the overlay data file, the information may be contained in the overlay data file header, or the camera may be capable of interpreting the location of the overlay by reading the overlay data file itself. Many different types of overlays may be used. . . . Implementation of graphic overlays can also be accomplished with user input. The user would select images and overlays according to personal preference after observing them in the viewfinder [] or on a viewscreen (not shown) included in the camera. . . . Moreover, while the captured image may be shown through the overlay in the viewfinder, the camera may not actually combine these images, but rather create a script file which would direct the computer to do the proper combination."

103.    The Sarbadhikari patent is material to (without limitation) at least claim 13 of the '190 patent, which requires display of interactive instructions prompting a user to perform specific operations, automatically updating the instructions so the user is guided through a sequence, and transferring the information captured to a formatted document in accordance with a predefined model.

104.    Palm is informed and believes, and thereupon alleges, that the Sarbadhikari patent was known to Mr. Sullivan during the '190 patent's prosecution.  Specifically, the Sarbadhikari patent was cited to Mr. Sullivan by another patent examiner of the PTO on or around April 26, 1999 as part of an Office Action during the prosecution of the '538 patent (also asserted against Defendants) as United States Application Serial No. 09/032,659.

105.    Palm is informed and believes, and thereupon alleges, that the materiality of the Sarbadhikari patent to the patentability of the '190 patent was known to Mr. Sullivan during the '190 patent's prosecution.  Specifically, the Sarbadhikari patent was cited as part of an Office Action on or around April 26, 1999 during the '538 patent prosecution that was sent to Mr. Sullivan and the subject matter of the '538 patent also pertained to digital cameras and to providing the user with interactive instructions to perform operations to create a predefined document.  However, Mr. Sullivan failed to disclose the Sarbadhikari patent to the examiner of the '190 patent.

106.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that the failure to disclose this reference was the result of an intent to mislead the PTO.

107.    Given the conduct of the '190 patentees with respect to the prosecution of that patent, as described above, the '190 patentees engaged in inequitable conduct during the '190 patent's prosecution by failing to disclose to the PTO material prior art, including the Sarbadhikari patent.  Consequently, the '190 patent is unenforceable against Palm because of the '190 patentees' inequitable conduct.

**PRAYER FOR RELIEF**

15.    Wherefore, Palm prays for judgment that:

A.    FlashPoint's Complaint against Palm be dismissed in its entirety with prejudice;

B.    FlashPoint is not entitled to the relief prayed for from Palm in its Complaint, or to any relief from Palm whatsoever;

C.    The '480 patent has never been, and is not now, infringed by Palm or by any other person using Palm's products in this District or anywhere else in the Unites States;

D.    The '480 patent is invalid, unenforceable, and void against Palm;

E.    The '956 patent has never been, and is not now, infringed by Palm or by any other person using Palm's products in this District or anywhere else in the Unites States;

F.    The '956 patent is invalid, unenforceable, and void against Palm;

G.    The '538 patent has never been, and is not now, infringed by Palm or by any other person using Palm's products in this District or anywhere else in the Unites States;

H.    The '538 patent is invalid, unenforceable, and void against Palm;

I.    The '190 patent has never been, and is not now, infringed by Palm or by any other person using Palm's products in this District or anywhere else in the Unites States;

J.    The '190 patent is invalid, unenforceable, and void against Palm;

K.    The '316 patent has never been, and is not now, infringed by Palm or by any other person using Palm's products in this District or anywhere else in the Unites States;

L.    The '316 patent is invalid, unenforceable, and void against Palm;

M.    The '914 patent has never been, and is not now, infringed by Palm or by any other person using Palm's products in this District or anywhere else in the Unites States;

N.    The '914 patent is invalid, unenforceable, and void against Palm;

O.    The '575 patent has never been, and is not now, infringed by Palm or by any other person using Palm's products in this District or anywhere else in the Unites States;

P.    The '575 patent is invalid, unenforceable, and void against Palm;

Q.    No damages or royalties are due or owing by Palm for any acts alleged by FlashPoint in the Complaint;

R.    Palm be awarded its costs (including expert fees), disbursements, and reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

S.    Palm be awarded such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Palm demands a trial by jury on all issues so triable.

DATED: April 30, 2008                    RATNERPRESTIA


                                         /s/RexADonnelly

                                         Rex A. Donnelly, IV (Delaware ID # 3492)
                                         E-mail:  radonnelly@ratnerprestia.com
                                         Joanne Ceballos (Delaware ID #2854)
                                         E-mail:  jceballos@ratnerprestia.com
                                          1007 Orange Street, Suite 1100
                                          Wilmington, DE 19801-1231
                                          Phone:  (302) 778-2500
                                          Fax:  (302) 778-2600


                                         Attorneys for Defendant Palm, Inc.




Of Counsel:

Robert T. Haslam
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA 94025

Michael M. Markman
Daniel N. Kassabian
Robert J. Williams
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104